UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1027(DSD/JMM)

Scott Hicken,

Plaintiff,

v. **ORDER**

Arnold, Anderson & Dove, P.L.L.P.,
a Minnesota corporation, and
Richard Schieffer, a natural person,

Defendants.

Thomas J. Lyons, Jr., Esq.; Consumer Justice Center, 342 County Road D East, Little Canada, MN 55117, counsel for plaintiff.

Michael A. Klutho, Esq., Christopher R. Morris, Esq., Shalanda D. Ballard, Esq. and Bassford, Lockhart, Truesdell & Briggs, 3550 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on the defendants' motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants defendants' motion.

**BACKGROUND**

Plaintiff Scott Hicken ("Hicken") and his wife were divorced in 1995. Prior to entry of the divorce decree, Hicken negotiated a marital termination agreement with his wife's attorney, which

FILED 4-16-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. 4-16-01
Deputy Clerk's Initials ______

divided the assets and liabilities of the marriage. The agreement was approved and accepted by the Dakota County District Court and incorporated into the final judgment and decree.

Following the divorce, Hicken's ex-wife retained Arnold, Anderson & Dove, P.L.L.P. and attorney Richard Schieffer (collectively "defendants") to enforce the terms of the decree. Schieffer filed a post-decree motion regarding distribution of the marital estate and also sent letters to Hicken's attorney discussing the divorce decree and pending motion. The Dakota County District Court granted the motion and entered judgment against Hicken pursuant to the divorce decree. Hicken then brought suit against Schieffer and his law firm claiming defendants' efforts on behalf of Hicken's ex-wife to enforce the terms of the divorce decree violated the Fair Debt Collection Practices Act. Defendants move for summary judgment, arguing that the Act does not apply.

**DISCUSSION**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when

its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court considers the defendants' motion for summary judgment.

Congress enacted the Fair Debt Collection Practices Act (FDCPA) in 1977 as an amendment to the Consumer Credit Protection Act "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95-382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. The FDCPA defines "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject

> of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5)(emphasis added). As the plain language of the statute indicates, not all obligations to pay are considered debts subject to the FDCPA. Rather, the FDCPA may be triggered only when an obligation to pay arises out of a consumer transaction. Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1068 (9th Cir. 1992) (holding that the FDCPA applies only to "consumer debts" incurred "primarily for personal, family, or household purposes"). At a minimum, the transaction must involve some kind of business dealing or other consensual consumer obligation. Hawthorne v. MAC Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir. 1998); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997)("[T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services").

Defendants contend that this case is factually analogous to the collection of child support payments, which courts have consistently held is not covered under the FDCPA. Mabe v. G.C. Servs. Ltd. Partnership, 32 F.3d 86 (4th Cir. 1994); Battye v. Child Support Servs., Inc., 873 F. Supp. 103 (N.D. Ill. 1994). In Mabe, the appellate court concluded that because child support payments were imposed by the state, they were not incurred in exchange for consumer goods and services and therefore did not

trigger FDCPA coverage. 32 F.3d at 88. Similarly, in Battye, the district court dismissed plaintiff's complaint on the grounds that the child support obligation on which plaintiff's claim was based was "not incurred as a 'consumer,' nor did it arise out of a 'transaction' in which [plaintiff] obtained credit in order to pay for personal goods or services." 873 F. Supp at 105-06.

Hicken rejects the analogy to these child support cases, pointing to a 1995 informal opinion letter from a member of the Federal Trade Commission staff which indicates that while child support and spousal support do not arise from a "transaction," a money or property award would be a "debt" if it were the result of an agreement between the parties. (Lyons Aff., Exh. 3). Hicken argues that because the marital termination agreement was "the product of a hard-bargained negotiation" between he and his ex-wife which altered the legal relations between them and imposed on Hicken a new financial obligation, it is a "transaction" covered by the FDCPA.

The court accepts that a negotiated marital settlement agreement is not analogous to a court's order for child support, which is typically based on a mathematical formula set out in the state statute. See, e.g., Minn. Stat. Ann. § 518.551, subd. 5. However, the dissolution of a marriage, with all of its attendant negotiations, is simply not a transaction between consumers. Hicken's property settlement obligations under the terms of the

divorce decree did not arise out of a consensual consumer obligation or business dealing and therefore does not implicate a "transaction" within the meaning of the FDCPA. See Staub v. Harris, 626 F.2d 275, 278 (3rd Cir. 1980) (holding that "at a minimum, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value"). Based on Hicken's failure to establish that the FDCPA applies, his claim must be dismissed on defendants' motion for summary judgment.[1]

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 16, 2001

David S. Doty, Judge
United States District Court

[1] Defendants also contend that dismissal is proper because they are not debt collectors under the FDCPA. Based on the determination that the negotiated marital termination agreement does not constitute a "debt" under the Act, the court will not address this additional issue.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEALNO.CIV
Rev. August 11, 1995